WERNER & PFLEIDERER CORPORATION, Plaintiff and Defendant-in-Counterclaim,

v.

GARY CHEMICAL CORPORATION, Defendant and Plaintiff-in-Counterclaim,

v.

WERNER & PFLEIDERER MASCHINENFABRIK, STUTTGART, Defendant-in-Counterclaim.

Civ. A. No. 85–5793.

United States District Court, D. New Jersey.

Oct. 12, 1988.

As Amended Oct. 27, 1988.

---

Warren F. Clark, John H. Ogden, Hackensack, N.J., for plaintiff and defendant-in-counterclaim.

David B. Wolf, Walter, Conston, Alexander & Green, New York City for defendant-in-counterclaim.

Barry A. Bachrach, Bowditch & Dewey, Worcester, Mass. and Edward F. Lamb, Robinson, Wayne & La Sala, Newark, N.J., for defendant and plaintiff and plaintiff-in-counterclaim.

## OPINION

WOLIN, District Judge.

Two motions are currently before the Court. In the first, plaintiff Werner & Pfleiderer ("WPC"), moves for summary judgment dismissing the counterclaims of defendant Gary Chemical Corporation ("Gary Chemical"), and for summary judgment in favor of its claim for $133,333.00. In the second motion, defendant-in-counterclaim Werner & Pfleiderer Maschinenfabrik Stuttgart ("WPS"), seeks summary judgment dismissing the claims asserted against it by Gary Chemical, or alternatively, partial summary judgment striking Gary Chemical's claims for consequential and incidental damages. For the reasons set forth below, the Court grants partial summary judgment in favor of WPC, dismissing Gary Chemical's claims for consequential and incidental damages, and dismissing the negligence and fraud counterclaims of Gary Chemical. The Court denies summary judgment as to WPC's claim for $133,333.00. Finally, the Court grants partial summary judgment for WPS, striking Gary Chemical's claims for consequential and incidental damages.

## I.  BACKGROUND

Defendant Gary Chemical is a thermoplastics compounder specializing in the production of polyvinylchloride ("PVC") compounds for use in various industries. Gary Chemical manufactures plastic PVC compounds by mixing PVC resin together with other chemical components. The PVC compounds are manufactured in a pellet form and Gary Chemical's customers purchase the pellets and mold them into a form designed for their individual application. Plaintiff WPC, a Delaware corporation with its principal place of business in New Jersey, is a seller of machinery for the plastics processing industry. WPC is the exclusive United States distributor of WPS, the defendant-in-counterclaim.

In 1983, Gary Chemical and WPC entered into discussions regarding Gary Chemical's purchase of a Kombiplast Type KP 90/200 ("Kombiplast"), a plastics processing machine. On January 31, 1984, WPC generated a seven page quotation for the Kombiplast which Gary Chemical "marked up" and included in a Purchase Order, dated May 9, 1984. Gary Chemical amended the Payment Schedule to provide that the final one-third payment of the total purchase price of $475,000.00 was not due until "successful start-up and guaranteed production rates achieved." The guaranteed production rate for flexible PVC products was 4,000 pounds per hour. This guaranteed production rate had been included in the written order for the Kombiplast that WPC placed with WPS on February 28, 1984. WPS responded by accepting WPC's order by means of a written specification, which identified Gary Chemical as the ultimate purchaser and also included a guaranteed production rate of "up to 4000 lbs. per hour."

The final contract between Gary Chemical and WPC included the following negotiated warranty:

Warranty: WPC warrants that goods manufactured by WPC and services provided by WPC hereunder will be free from defects in workmanship and material for a period of eighteen months from the transfer of risk per Section 4 hereof or one year after the equipment has been first put into operation. If any such goods or services fail to meet the foregoing warranties, WPC will correct any such failure by repair or replacement of any defective or damaged part or parts of the goods free of charge relative to

cost of parts and labor supplied by WPC. Final determination as to whether a good or part is actually defective rests with WPC. The obligation of WPC hereunder will be limited solely to the repair and replacement of goods that fall within the foregoing limitations and will be conditioned upon receipt by us of written notice.... In addition, WPC will not be liable for any loss, damage or injury of any nature, whether direct, indirect, incidental, consequential or special, in connection with or resulting from the use of the goods or services.
THE WARRANTIES SET FORTH HEREIN ARE IN LIEU OF ANY OTHER CONDITION OR WARRANTY OF FITNESS, QUALITY, OR MERCHANTABILITY, EXPRESS OR IMPLIED.

The WPC Kombiplast was installed at Gary Chemical's plant in September, 1984. WPC's technicians attempted to start-up the machine and get it to run at the guaranteed production rate. While start-up was accomplished, it remains in dispute if the guaranteed production rates were ever achieved. Gary Chemical's principal complaint was that when the Kombiplast was run at the guaranteed production rate, part of the produced material was agglomerated, a condition in which the plastic product sticks together.

From September, 1984 to October, 1985, WPC and Gary Chemical attempted to get the Kombiplast to run at guaranteed production rates with minimal agglomeration (2% was the acceptable rate). WPC installed new equipment in the Kombiplast but Gary Chemical remained unsatisfied. It remains in dispute whether the Kombiplast did indeed ever achieve the guaranteed production rate. Both sides point to memoranda in which the other did or did not admit that the Kombiplast had achieved the guaranteed production rate.

In 1986, Gary Chemical, on its own, modified the manner by which the compounded product was cut in order to avoid agglomeration of the cut product, at a cost of $150,00.00, enabling the machine to produce PVC at above the guaranteed rates. WPC brought suit against Gary Chemical

for payment of $133,333.00, the remaining one-third of the purchase price which Gary Chemical had the right to retain until the Kombiplast achieved the guaranteed production rate. Gary counterclaimed against WPC for breach of implied warranties, negligent supply of improperly designed machine, breach of contract for improper service, and negligent repair of machine. Gary also included in its counterclaim counts of fraud and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.* Gary seeks compensatory and punitive damages, as well as treble damages under the New Jersey Consumer Fraud Statute. Gary Chemical also filed a third party claim against WPS for breach of an express warranty Gary claims WPS gave to WPC.

## II. DISCUSSION

A. *Gary Chemical's Claim for Incidental and Consequential Damages as a Result of WPC's Breach of Warranties*

In Count One of its amended counterclaim, Gary Chemical alleges that WPC breached its contract with Gary and demands damages for lost hours of production, lost administrative and managerial time, loss of good will, destruction of raw materials, damages caused by the production of inferior goods, cost of the machine and loss of sales opportunity. Gary calculates the sales opportunity loss alone to be $3,153,716.00. In Counts Two and Three of Gary's counterclaim, Gary alleges, respectively, that WPC impliedly warranted that the machine was fit for a particular purpose and gave an implied warrant of merchantability. Gary claims damages as a result of the breach of these implied warranties.

Gary Chemical, in its amended counterclaim, terms the damages it seeks as "compensatory." Amended Counterclaim ¶ 78. However, the better description for certain claimed damages of Gary, such as lost sales opportunity, is "consequential" or "incidental." Gary's demand for such consequential damages is, according to

WPC, barred by the warranty clause of the contract between WPC and Gary, and, in particular, the portion of the warranty clause in which WPC limits its obligations to repair or replacement of the Kombiplast and disclaims liability for all consequential and incidental damages. *See supra* page 810. Gary Chemical argues that given the failure of WPC to repair the Kombiplast so it would perform at the guaranteed production rates, the repair and replacement remedy of the contract failed of its essential purpose.[1] Such a failure, argues Gary, causes the warranty's limitation of remedies to become inapplicable, allowing Gary to press its claim for consequential damages. The Court finds Gary Chemical's argument unpersuasive in light of New Jersey law and the New Jersey Supreme Court's interpretation of the Uniform Commercial Code.

The most important New Jersey case in this area is undoubtedly *Kearney & Trecker v. Master Engraving*, 107 N.J. 584, 527 A.2d 429 (1987). In that case, the New Jersey Supreme Court held that the Uniform Commercial Code did not require invalidation of a contractual exclusion of consequential damages when a limited repair and replacement warranty failed to achieve its essential purpose. *Kearney*, 107 N.J. at 600, 527 A.2d 429. The Court adopted the reasoning of *Chatlos Sys. v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir.1980), in which the Third Circuit predicted how New Jersey courts would rule on the subject. In *Chatlos*, the Court stated:

> "It appears to us that the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable.... The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The Code, moreover, tests each by a dif-

ferent standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive."

*Chatlos*, 635 F.2d at 1086 (footnotes and citations omitted).

Both *Kearney* and *Chatlos* are based on a careful analysis of U.C.C. § 2–719 and § 2–714. Section 2–719(1)(a) allows an agreement to limit the buyer's remedies to repair and replacement of non-conforming goods. Section 2–719(2) provides that: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." Finally, § 2–719(3) provides, in part: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." The courts in *Kearney* and *Chatlos* were faced with the question of how to interpret § 2–719(2) when a repair and replacement remedy failed. They decided that because the Code provides a § 2–714(2) measure of damages to an aggrieved buyer, it would be in keeping with the Code's emphasis on freedom of contract to allow a consequential damages exclusion to withstand the failure of a repair and replacement warranty. In other words, when a buyer such as Gary Chemical is faced with a failure of a limited repair and replacement remedy, and is subject to a consequential damage exclusion, the buyer is not left without a remedy, as Gary Chemical mistakenly suggests, but can get the § 2–714(2) measure of damages: The difference between the value of the goods accepted and the value they would have had if they had been as warranted. Additionally, as a matter of basic

---

**1.** Gary Chemical initially argues that the text of the warranty clause is worded such that the repair and replacement remedy applies only to goods manufactured by WPC and not by WPS, and that the clause excluding consequential damages applies only to a preceding clause concerned with transfer of goods to a third party.

The Court finds Gary Chemical's new interpretation of the contract entirely contradicted by the text of the contract, especially viewed in the light of how the parties themselves have evidently understood it and have acted in accordance with the contract.

contract law, if a seller such as WPC does not meet its repair obligations and the buyer completes the repairs successfully at its own expense, the Court finds it probable that the buyer would be able to recover the repair costs.[2]

■ Because Gary Chemical's attempts to distinguish *Kearney* and *Chatlos* are unpersuasive, Gary's only remaining argument for not enforcing the consequential damage exclusion clause is that enforcement of the clause would in some way be unconscionable in this case. Defendant's Brief in Opposition, p. 27. In *Kearney*, the court stated:

> It is only when the circumstances of the transaction, including the seller's breach, causes the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties that invalidation of the exclusionary clause would be appropriate under the Code. For example, although a buyer may agree to the exclusion of consequential damages, a seller's wrongful repudiation of a repair warranty may expose a buyer to consequential damages not contemplated by the contract, and other Code remedies may be inadequate. In such circumstances, a court might appropriately decline to enforce the exclusion.

*Kearney*, 107 N.J. at 600, 527 A.2d 429.

Gary Chemical asserts that enforcement of the consequential damages exclusion is unconscionable because such enforcement will leave Gary without a remedy.[3] Such an argument fails to take into account the remedy Gary has under U.C.C. § 2–714. Moreover, *Kearney* and *Chatlos* also make clear that an important factor in determining if such an exclusion is unconscionable is the size and experience of the parties involved. "It is also important that the claim is for commercial loss and the adver-

saries are substantial business concerns. We find no great disparity in the parties' bargaining power or sophistication." *Chatlos*, 635 F.2d at 1087.

Underlying the distinction made between commercial as opposed to consumer parties is the idea that contracts between commercial parties contain negotiated allocations of risk which reflect the rational economic decisions of the parties. "As between commercial parties, then, the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement." *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 577, 489 A.2d 660 (1985). Included in such an allocation of risk is the possibility that an acquired machine will not attain specified production rates and thus cause the purchaser to lose business opportunities.

Gary Chemical and WPC are both experienced, large commercial entities and the Kombiplast contract was carefully negotiated. The facts of the case at bar thus strongly resemble those in both *Kearney* and *Chatlos*. Therefore, the Court declines to find that it would be unconscionable to enforce the consequential damage exclusion even though Gary alleges that WPC failed to adequately fulfill its repair and replacement warranty. Accordingly, the Court finds that the consequential damages exclusion is valid and thus grants partial summary judgment dismissing Counts One, Two and Three of Gary Chemical's counterclaim for consequential and incidental damages. However, the Court does not dismiss Counts One, Two and Three of the counterclaim to the extent that they demand damages in accordance with U.C.C. § 2–714(2) or to compensate Gary Chemical for costs it incurred to complete repairs on the Kombiplast to enable it

---

**2.** Such a recovery of repair costs would be characterized as damages directly attributable to the seller's breach of a duty to repair rather than as consequential damages caused by an overall breach of contract.

**3.** Gary Chemical also argues that WPC wrongfully repudiated its repair obligations, thus bringing it under the exception mentioned in

*Kearney* at 600, 527 A.2d 429. However, a review of the entire record, including evidence establishing continued attempts by WPC over a two year period to repair the Kombiplast, convinces the Court that no such wrongful repudiation occurred and no genuine dispute of fact surrounds the issue of wrongful repudiation.

to perform at the guaranteed production rate.

### B. *Gary Chemical's Counterclaims Alleging Negligence by WPC*

■ Counts Five and Six of Gary Chemical's counterclaim allege, respectively, a failure to supervise personnel, failure to discover design deficiencies and negligence on the part of plaintiff regarding repairs, supervision and design.[4] WPC argues that such negligence-based claims are barred by the New Jersey Supreme Court's holding in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). In that case, the court stated:

> [A] seller's duty of care generally stops short of creating a right in a commercial buyer to recover a purely economic loss. Thus viewed, the definition of the seller's duty reflects a policy choice that economic losses inflicted by a seller of goods are better resolved under principles of contract law. In that context, economic interests traditionally have not been entitled to protection against mere negligence.

*Id.* at 579, 489 A.2d 660.

Gary Chemical admits that *Spring Motors* applies to *goods* covered by commercial contracts, but argues that its claim against WPC for negligent provision of *services* is not barred by *Spring Motors*. This argument runs counter to both the facts and theory underlying the *Spring Motors* decision. The *Spring Motors* case involved a repair and replacement warranty virtually identical to the one present in Gary's contract with WPC and the seller in *Spring Motors* did make certain attempts at repair and replacement. *Id.* at 563, 489 A.2d 660. More importantly, the *Spring Motors* holding stands for the general proposition that negligence claims will not be entertained in contractual disputes between commercial entities for purely economic losses. WPC's obligation to repair the Kombiplast was contained in the original, negotiated contract between the parties. As such, the

attempts WPC made at repairing the Kombiplast, whether or not successful, were an integral part of the contract between the parties and such attempts at repair and service are thus immune from negligence claims under the doctrine of *Spring Motors*. Therefore, the Court grants summary judgment with regard to Counts Five and Six of Gary Chemical's counterclaim.

### C. *Gary Chemical's Fraud Counterclaims*

■ Count Seven of Gary Chemical's counterclaim alleges fraudulent failure by WPC to disclose material facts in connection with the sale of the Kombiplast. Specifically, Gary alleges that WPC sold the Kombiplast to Gary with knowledge that the machine could not meet the guaranteed production rates *contained in the contract*. Once again, Gary Chemical chooses to press a tort claim in the context of a contract dispute between two commercial entities with relatively equal bargaining power. This runs contrary to the thrust of the New Jersey Supreme Court's decision in the *Spring Motors* case.

While the *Spring Motors* decision did not directly address the issue of fraud claims, at least one District of New Jersey case has interpreted the *Spring Motors* holding as applying to fraud claims. *Unifoil Corp. v. Cheque Printers and Encoders, Ltd.*, 622 F.Supp. 268 (D.N.J.1985). The court stated:

> On the fraud claim, Cheque Printers argues that *Spring Motors* does not directly address allegations of intentionally tortious conduct. That is true: but the reasoning of Spring Motors leads us to conclude that, as between commercial parties, New Jersey will not countenance such claims.

*Id.* at 270.

Gary Chemical argues that *Unifoil*, itself, recognized that a party could bring a fraudulent inducement claim even in the presence of a contract. However, the court in *Unifoil* differentiated between fraudu-

---

4. Count Four of Gary Chemical's counterclaim alleges negligent supply of a defective machine. In its opposition papers to WPC's instant mo-
tion, however, Gary withdraws Count Four, and thus it is not considered by the Court.

lent actions which are extraneous to the contract and those actions which are part of the contractual performance itself. *Id.* at 271. In the case at hand, the guaranteed production rates were *contained in the actual contract.* If these production rates are not met, Gary Chemical has the benefit of those contractual remedies contained in the contract or the U.C.C.

Gary Chemical also argues that the New Jersey Superior Court case of *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226 N.J.Super. 200, 543 A.2d 1020 (App.Div.1988), holds that commercial entities can press fraud claims. That case, however, was concerned with punitive damages and involved a business which bought a yacht, rather than a product which went to the substance of its business. *Spring Motors* and *Unifoil,* by contrast, involved commercial entities which were involved in carefully negotiated contracts for products which did involve the parties' substantive commercial interests. Thus, the Court considers the *Unifoil* holding to be a valid interpretation of how *Spring Motors* should be applied to fraud claims of large, commercial entities such as Gary Chemical, and finds under New Jersey law that Gary Chemical must be satisfied with contractual remedies rather than remedies grounded in tort.

The Court reaches the same conclusion regarding Gary Chemical's claim pursuant to N.J.S.A. 56:8–1, *et seq.* (Consumer Fraud Act). Gary urges the Court to consider the holding of *Hundred East Credit Corp. v. Eric Schuster*, 212 N.J.Super. 350, 515 A.2d 246 (App.Div.1986), in which the court found that a business entity can be a consumer under the Consumer Fraud Act. However, this Court believes that the Consumer Fraud Act must be interpreted in light of the New Jersey Supreme Court holding in *Spring Motors* and its articulated policy of restricting the remedies available to commercial entities involved in a dispute which is essentially contractual in nature, and the disputed performance is covered by the contract. The court in *Hundred East* apparently recognized this policy when it stated:

It may well be, of course, that certain practices unlawful in the sale of personal goods to an individual consumer would not be held unlawful in a transaction between particular business entities.

*Hundred East*, 212 N.J.Super. at 357, 515 A.2d 246. The Court finds that the dispute between WPC and Gary Chemical is the type of commercial contract suit between experienced commercial entities which is not covered by the New Jersey Consumer Fraud Statute.

Accordingly, the Court grants summary judgment dismissing Counts Seven and Eight of Gary Chemical's counterclaim which allege, respectively, that WPC is liable for common law fraud and for violation of New Jersey's Consumer Fraud Statute.

D. *WPC's Motion For Summary Judgment Regarding Payment of the Outstanding $133,330.00 Due on the Contract With Defendant Gary Chemical*

■ The Court need not spend much time discussing WPC's motion for summary judgment regarding the $133,330.00 payment which Gary Chemical has withheld pursuant to the clause in the contract which permitted Gary to withhold one-third of the purchase price until the Kombiplast was successfully started up and attained guaranteed production rates. Whether or not the Kombiplast ever achieved the guaranteed production rate remains at issue, as does the intended meaning of "production rate". These factual questions go to the heart of the dispute between the two parties.

In considering a motion for summary judgment, the judge's role "is not himself to weigh the evidence and determine the truth of the matter," but to determine if there exists a genuine issue of material fact which "because [it] may reasonably be resolved in favor of either party ... properly can be resolved only by a Finder of Fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In connection with the instant motion, supporting papers and affidavits have been submitted by both sides which highlight conflicting factual accounts

of whether the Kombiplast ever achieved the guaranteed production rates contained in the contract. These conflicting accounts represent genuine material issues of fact which preclude summary judgment being rendered on WPC's claim for payment of the $133,330.00 balance.

Plaintiff's motion for summary judgment on its claim for $133,330.00 is therefore denied.

### E. *Gary Chemical's Claims Against Third Party Defendant WPS*

On October 27, 1986, Gary Chemical successfully moved for leave to implead WPS and set forth the express warranty claims set forth in Counts Ten and Eleven of Gary's amended counterclaim. Gary Chemical seeks "compensatory" damages, which evidently include the same mixture of incidental and consequential damages which Gary also seeks from WPC. *See supra* page 811.

■ Gary Chemical asserts that it has standing to sue WPS by virtue of an alleged express warranty made by WPS to WPC concerning the ability of the Kombiplast to attain the 4,000 pounds per hour production rate contained in the Gary–WPC contract. WPS' position is that "New Jersey law is still unsettled with respect to issues of privity in a contractual transaction between commercial entities." Defendant-in-Counterclaim's Reply Brief at p. 2. To ascertain New Jersey law on the question of whether an ultimate purchaser can assert a warranty claim against a remote manufacturer or supplier, this Court again turns to the New Jersey Supreme Court's opinion in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). On this question, the *Spring Motors* opinion is clear: "We conclude that the absence of privity between a remote supplier and an ultimate purchaser should not preclude the extension to the purchaser of the supplier's warranties made to the manufacturer." *Id.* at 582, 489 A.2d 660. Thus, this Court finds that as a matter of New Jersey law, Gary Chemical does have a right to sue WPS based on any express warranty WPS may have made to WPC regarding the Kombiplast.

Perhaps anticipating the Court's view as to the legal right of Gary to sue WPS based on warranties WPS may have made to WPC, WPS argues that, as a factual matter, it is indisputable that WPS made no warranties to WPC concerning the Kombiplast sold to Gary. Gary, in response, asserts that WPS did make an express warranty to WPC.

The critical fact in dispute is what meaning to attach to WPC's sending of an order to WPS which asked for confirmation that the Kombiplast would attain the production rates promised to Gary Chemical. WPS accepted this order by means of a written "specification" which named Gary Chemical as the ultimate purchaser and stated that the "Guaranteed Output" of the Kombiplast would be "up to [sic] 4000 lbs/h." Gary Chemical also points out that the distribution agreement between WPS and WPC in pertinent part states:

> WPS also warrants that the product shall perform in accordance with all applicable process specifications and other performance criteria, *where such process specifications or criteria* were provided by WPS or *supplied by WPC to WPS for review, comment and agreement,* prior to agreement with WPC's customer and where WPC has adhered to such specifications or criteria.

Gary Chemical's argument, therefore, is that a warranty from WPS to WPC was created when WPS was informed of the guaranteed production rate promised to Gary Chemical and included this production rate in its written specification accepting WPC's order for the Kombiplast.

■ The Court finds that a material issue of fact exists as to whether WPS did, by receiving the production rate schedule and including these figures in its "specification", convey an express warranty to WPC, which can now be relied upon by Gary Chemical. The existence of such an express warranty depends on, among other things, the past practices of WPS and WPC, and the understanding WPS and WPC had as to what rights and liabilities,

**817**

under the Distribution Agreement, were in fact created by the method WPS and WPC used in executing the order for the Kombi-plast.

While the Court finds a material issue of fact exists as to the existence of an express warranty from WPS to WPC, the Court finds that, as a matter of law, Gary Chemical is subject to a clause in the WPS–WPC Distribution Agreement excluding incidental and consequential damages under such an express warranty. In *Spring Motors*, the New Jersey Supreme Court stated:

> "We reserve determination on the effectiveness of a remote manufacturer's disclaimer or limitation on express warranties to an ultimate purchaser that did not have the opportunity to negotiate over the terms of the agreement."

*Spring Motors*, 98 N.J. at 588, 489 A.2d 660. However, given the New Jersey Supreme Court's acceptance of the validity of consequential damage exclusions in *Kearney & Trecker Corp. v. Master Engraving Co., Inc.*, 107 N.J. 584, 527 A.2d 429 (1987)[5], this Court predicts that the New Jersey Supreme Court would, under certain circumstances, uphold a consequential damage exclusion clause in a case involving large commercial entities in which a buyer brings a claim against a remote manufacturer based on an express warranty made by the manufacturer to the intermediate distributor. It is significant that the clause excluding consequential damages in the WPS–WPC distribution agreement closely resembles the clause contained in the WPC–Gary Chemical contract, which Gary did have a chance to negotiate. Moreover, WPS was not completely remote from Gary Chemical and, indeed, Gary Chemical apparently thought of itself as dealing with WPS and WPC largely as one entity, rather than with a completely distinct manufacturer and distributor.

Finally, the Court believes that the holding of *Kearney* would be frustrated if a party such as Gary Chemical, bound by an enforceable consequential damage exclusion in its contract with a distributor, could circumvent that exclusion clause by pressing its consequential damage claims against a remote manufacturer, particularly when the contract between the manufacturer and distributor also contained a clause excluding consequential damages.

Therefore, the Court denies WPS' motion for summary judgment dismissing Gary Chemical's third-party claims against WPS, but grants WPS partial summary judgment dismissing Gary Chemical's claims for consequential and incidental damages against WPS.

### III. CONCLUSION

For the reasons set forth above, the Court grants partial summary judgment in favor of WPC dismissing Gary Chemical's claims for consequential and incidental damages, and the negligence and fraud counts of Gary Chemical's counterclaim. The Court denies summary judgment as to WPC's claim for $133,333.00. Finally, the Court grants partial summary judgment in favor of WPS, striking Gary Chemical's claims for consequential and incidental damages.

---

5. *See* discussion of WPC's exclusion of consequential damages, *supra,* pages 811–814.