**FIRST VALLEY LEASING, INC., Plaintiff,**

**v.**

**Theodore GOUSHY, Defendant.**

**Civ. No. 91–1202 (CSF).**

United States District Court, D. New Jersey.

June 2, 1992.

Barbara Lanza Farley, P.C. by Barbara Lanza Farley, Haddonfield, N.J., for plaintiff.

Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C. by Anthony B. Vignuolo, Eileen M. Foley, North Brunswick, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

Before the court is a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure by plaintiff, First Valley Leasing, Inc. ("First Valley"). Defendant, Theodore Goushy ("Goushy"), the owner of Bow Sales Co., opposes the motion in all respects. For the following reasons, the plaintiff's motion for summary judgment is granted in part and denied in part.

## I. *Facts*

In September 1989, First Valley, a Pennsylvania commercial leasing corporation, was asked by Pagano Performance Truck Parts, Inc. ("Pagano"), a New Jersey corporation and a wholly-owned subsidiary of Clark Truck Leasing, Inc., to enter into a financing lease arrangement so that Pagano could re-establish a repair shop business. Simultaneously, Pagano contacted defendant, Goushy, to discuss leasing certain equipment necessary for the operation of the business. Goushy, who is a manufacturer's representative for the retail sale of machine parts and equipment, is a New

Jersey resident doing business as Bow Sales Co., a New Jersey corporation.

Plaintiff alleges that it was told by Pagano that, after Pagano selected the items it needed, plaintiff would purchase the equipment from defendant and, in turn, lease the equipment to Pagano. Plaintiff alleges that Goushy subsequently submitted an invoice listing twenty-six specifically described items and a purchase price in the total amount of $92,924. *See* Plaintiff's Exh. A. Plaintiff asserts that it paid defendant the amount listed on the invoice plus the New Jersey State Sales Tax amount of $5,575.44.

Plaintiff alleges that, sometime thereafter, Pagano stopped making payments in accordance with the lease agreement and filed a petition for bankruptcy protection under Title 11 of the United States Code. Plaintiff asserts that upon taking inventory of the equipment, which it believed that it had purchased from defendant, it discovered that most of the twenty-six items listed on the invoice were not owned by defendant; instead, plaintiff asserts, most of the items were already owned by Pagano and were encumbered by previously existing security interests. Plaintiff asserts that, in fact, only eight of the items listed on the invoice were actually owned by defendant. Plaintiff alleges that the value of the eight items is $11,970.00, plus tax. *See* McGee Affidavit, ¶ 3.

Accordingly, in March of 1991, plaintiff filed this action alleging causes of action for common-law fraud, breach of contract and breach of the New Jersey Consumer Fraud Statute, N.J.S.A. § 56:8–1 et seq. Plaintiff has moved for summary judgment.

In opposition to this motion, defendant asserts that he was instructed by Pagano's manager, Fred Marino, to include on the invoice all of the equipment presently existing at Pagano's shop plus the eight newly purchased items. Plaintiff's Exh. C, Goushy deposition, p. 23. Defendant asserts that he complied with this request because he was told by Marino that "another company was willing to lease back its existing equipment." Defendant's letter

brief at p. 2. During deposition, however, defendant testified that he did not know the purpose of including all the items on the invoice and that he did not ask. Plaintiff's Exh. C, Goushy Deposition, p. 23. Defendant also testified that he did not purchase the equipment from Pagano and then sell it back to them. *Id.* at 27. Nevertheless, it is undisputed that defendant submitted the invoice listing twenty-six items to plaintiff. Further, it is undisputed that plaintiff paid to the defendant the amount of $92,924.00, which was the amount listed on the invoice.

Defendant alleges that upon receipt of the check from First Valley, he and Marino met at a diner, where Goushy turned over a substantial portion of the proceeds to Marino. *Id.* at 35–37. Defendant alleges that he retained $5,000.00, which represented a partial payment for the eight pieces of equipment actually furnished by defendant to Pagano or, stated another way, the eight items actually sold to First Valley. *Id.* Defendant asserts that summary judgment is precluded because numerous factual questions exist.

## II. *Summary Judgment Standard*

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton*, 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

### III. *Breach of Contract*

Although neither party has addressed the issue, it is clear that, because the disputed transaction involved the sale of goods, the provisions of the Uniform Commercial Code ("UCC") will govern the court's analysis. *See* N.J.S.A. § 12A:2–102. This is true because the "moveable" items listed on the invoice were specifically identified as the objects of the contract for sale. *See id.* at § 12A:2–105. Having set forth the applicable statutory construct that will govern the court's analysis, the court must look to the applicable provisions of the UCC to determine the rights and remedies of the parties.

■ Primarily, defendant argues that no enforceable contract existed between the parties because the invoice did not constitute a sufficient writing under the UCC to indicate that a contract had been made. Defendant's letter brief at p. 7 (citing *Michael Halebian N.J., Inc. v. Roppe Rubber Corp.,* 718 F.Supp. 348, 364 (D.N.J.1989)). Hence, defendant argues, the Statute of Frauds is applicable to bar plaintiff's action for breach of contract. The court disagrees.

The Code provides that when a transaction for the sale of goods is over $500, there must be some writing, signed by the party against whom enforcement is sought, sufficient to indicate that a contract for sale has been made. N.J.S.A. § 12A:2–201(1). In this case, defendant sent an invoice to plaintiff which clearly delineated the twenty-six items that were the subject of the transaction. Not only was the price term indicated, but also the invoice contained a specific description of each item. The only issue presented, then, is whether the invoice was signed by the defendant. An examination of the invoice reveals that, although the invoice was not signed by Goushy, the invoice contained a letterhead which provided the name and address of Bow Sales Co. A letterhead has been deemed to fall within the ambit of the definition of "signature" under the Code. *See id.* at 12A:1–201(39) and Comment 39. Accordingly, it is the court's opinion that the Statute of Frauds has been satisfied.

■ Even if the invoice had not satisfied the mandate of a "signed writing," the defendant would be prohibited from invoking the Statute of Frauds defense. This is true because the Code prohibits a party from invoking the Statute of Frauds defense if that party has received and accepted payment. *Id.* at § 12A:2–201(3)(c). It is undisputed that defendant received and accepted plaintiff's check.

■ Next, defendant argues that there is no contract, because "there was no meeting of the minds between plaintiff and defendant as to the essential elements of the contract." Defendant's brief at p. 7. The defendant's argument, however, ignores the relevant provisions of the Code. Section 12A:2–204(1) provides that "a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id.* Further, the section provides that a contract will not fail for indefiniteness if the parties have intended a contract. *Id.* at § 12A:2–204(3). To determine if the parties have intended a contractual relationship, the court will look to the objective intent of the parties as manifested through their conduct, and not, as defendant urges, at the subjective intent of one of the par-

ties. *See Air Master Sales Co. v. Northbridge Park Co-op., Inc.*, 748 F.Supp. 1110, 1115 (D.N.J.1990).

█ In the case before the court, the defendant submitted to plaintiff an invoice listing twenty-six clearly identified items and requested payment. Plaintiff paid the defendant the amount requested. The court recognizes that there were no face-to-face negotiations between plaintiff and defendant. Moreover, the court understands that the deal was facilitated by a third party, Pagano. It is undisputed, however, that defendant submitted an invoice listing twenty-six items and accepted payment for those items. Viewed objectively, this activity indicates the existence of a contract. This conclusion is bolstered by the fact that the court cannot imagine any rational business reason for the plaintiff to have paid over $92,000 without having obtained equivalent value in return. Accordingly, it is the court's opinion that a contract was formed between First Valley and Goushy.

█ It is axiomatic that once a contract is formed, the obligation of a buyer is to transfer and deliver the contracted-for goods, and the obligation of the seller is to accept and pay for the goods. N.J.S.A. § 12A:2–301. It is also firmly established that for a seller to transfer and deliver the goods, he or she must have clear, marketable title to the goods. In fact, the Code provides that in each contract for sale there exists an express warranty that the seller has title to the goods. *Id.* at § 12A:2–312(1)(a). Breach of the express warranty subjects the seller to damages. In the case before the court it is apparent that the seller lacked title to all but eight of the items listed on the invoice. Accordingly, the seller will be liable to the buyer for available contract damages. Section 12A:2–711 of the UCC is a catalogue of damage remedies available to a buyer upon a seller's breach. N.J.S.A. § 12A:2–711.

In this case, the Code permits First Valley to recover the amount it expended, $92,-424 plus the sales tax paid by plaintiff in the amount of $5,575.44, less the value of the eight items recovered by plaintiff, valued at $11,970, plus 6% New Jersey Sales Tax in the amount of $718.20. *See* N.J.S.A. § 12A:2–714(2). Thus, the amount of plaintiff's contract damages would be $98,499.44, minus $12,688.20, which equals $85,811.24. *See* McGee affidavit, ¶¶ 3 and 4. The plaintiff is also permitted to recover incidental and consequential damages. *See* N.J.S.A. §§ 12A:2–714(3) and 12A:2–715.

Realizing that the contract remedy does not provide it with the most substantial relief, plaintiff also seeks to hold defendant liable for common-law fraud and for violating the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1 et seq. The following analysis will be a discussion of whether plaintiff, a commercial entity, is permitted to pursue such claims.

## IV. *Availability of Tort Damages*

█ Section 12A:1–103 of the UCC permits an aggrieved party to pursue all other non-code remedies that have not been specifically displaced by the code. N.J.S.A. § 12A:1–103. *See Kaplan v. Walker*, 164 N.J.Super. 130, 135, 395 A.2d 897 (App.Div. 1978) (the section "mandates the supplementation of the Uniform Commercial Code by principles of law and equity unless displaced by any particular provision of the Code"). Included among the nonexhaustive list of causes of action is fraud. *See* N.J.S.A. § 12A:1–103. Thus, as previously noted, First Valley seeks to hold Goushy liable for fraud and for violating the New Jersey Consumer Fraud Act.

Recently, however, a controversy has developed within the New Jersey courts and the federal courts applying New Jersey law concerning the issue of whether a commercial party who sues for breach of contract can recover tort damages for purely economic loss. *See* Sarno, *Whither Tort Damages for Breach of Contract?*, 131 N.J.L.J. 255 at col. 1 (May 25, 1992). The New Jersey Supreme Court has not addressed the issue, and the Third Circuit has specifically declined to "wade into [the] morass." *Vanguard Telecommunications, Inc. v. Southern New England Tel.*, 900 F.2d 645, 654 (3d Cir.1990). The case

presented to this court requires a determination of the issue.

In this action, the court must apply the law of New Jersey. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Howell v. Celotex Corp.*, 904 F.2d 3, 4 (3d Cir.1990); *Rustay v. Consolidated Rail Corp.*, 775 F.Supp. 161, 163 (D.N.J.1991) ("It is well settled that in diversity cases a federal court must apply the substantive law of the forum state."). As noted above, the New Jersey Supreme Court has not addressed the issue of whether a commercial party may recover tort damages for purely economic loss. Accordingly, the court must predict how the New Jersey Supreme Court would decide the issue. *Id.* In making this determination, the court will "be sensitive to the doctrinal trends of the state whose law it applies, and the policies which informed the prior adjudication by the state courts." *Butler v. Sherman, Silverstein & Kohl, P.C.*, 755 F.Supp. 1259, 1265 (D.N.J.1990) (citing *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982)). While it should be noted that "state intermediate appellate courts are not automatically controlling where the highest court of the state has not spoken on the point," *id.* (citing *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 29 (3d Cir.1977)), it is imperative to note that the state lower court decisions should be examined as "indicia of how the state's highest court might decide" the issue. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). Accordingly, the court will examine the issue to determine how the New Jersey Supreme Court would rule if presented with a similar question.

The controversy over whether a commercial buyer who is economically damaged because of a seller's breach may recover tort damages for purely economic loss springs from the New Jersey Supreme Court's decision in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985). In *Spring Motors*, the court prohibited a commercial buyer from recovering economic damages under tort theories of strict liability and negli-

gence because, the court declared, the aggrieved plaintiff had a remedy for breach of warranty under the UCC. *Id.* at 589, 489 A.2d 660. In reaching this conclusion, the court stated:

The demarcation of duties arising in tort and those arising in contract is often indistinct, but one difference appears in the interest protected under each set of principles.... The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

*Id.* at 579–80, 489 A.2d 660.

*Spring Motors* involved a dispute between a leasing company, which purchased a number of Ford trucks equipped with defective transmissions, and the manufacturer of the transmissions. Plaintiff, Spring Motors, brought causes of action against the manufacturer sounding in strict liability, negligence and breach of warranty under the UCC. The court held that Spring Motors could recover from the manufacturer for breach of warranty under the Code, but that it could not recover on the proffered tort theories. The court reasoned:

[A] seller's duty of care generally stops short of creating a right in a commercial buyer to recover a purely economic loss. Thus viewed, the definition of the seller's duty reflects a policy choice that economic losses inflicted by a seller of goods are better resolved under principles of contract law. In that context economic interests traditionally have not been enti-

tled to protection against mere negligence.

*Id.* at 579, 489 A.2d 660.

Hence, the question presented to this court is whether the New Jersey Supreme Court's rationale in *Spring Motors* extends to fraud claims brought by a commercial party who has a remedy under the UCC. Having examined the passages cited above and having reviewed the cases interpreting *Spring Motors,* the court believes that, if confronted with the peculiar facts of this case, the New Jersey Supreme Court would permit plaintiff to pursue its claims for tort damages against defendant.

The facts of this case are indeed unique. Defendant asserts that he submitted to plaintiff an invoice which contained eighteen items that he did not own, because he was told by Pagano's representative that this was the way the transaction was to be conducted. Defendant claims that he did not question this purported reason. The court finds the defendant's assertions incredible.

It is the court's belief that defendant and Pagano conspired to defraud plaintiff. It is clear that, although Goushy turned over most of the proceeds from the transaction, defendant still benefitted from the deal because he sold eight items that he may not have sold, absent the purported sale to First Valley. Thus, although the court has determined that a contract was formed and that the defendant will be liable for breach of contract, it is the court's opinion that this is not a garden variety breach of contract case; instead, it is the court's view that this is really a classic case of fraud contemplated within the purview of N.J.S.A. § 12A:1–103.

Contrary to *Spring Motors,* the parties in this action neither conducted face-to-face negotiations nor bargained for the rights and remedies available upon breach of contract. Similarly, the *Spring Motors* case did not involve an allegation of fraud; rather, *Spring Motors* dealt with the torts of negligence and strict liability. Accordingly, it is the court's opinion that if the New Jersey Supreme Court were presented with the facts of this case, it would permit plaintiff to sue defendant for tort damages.

This conclusion is supported by the decision in *Dreier Co. v. Unitronix Corp.,* 218 N.J.Super. 260, 272, 527 A.2d 875 (App.Div. 1986). Holding that a corporation is a consumer within the definition of the New Jersey Consumer Fraud Act, the *Dreier* court permitted a commercial party to maintain an action for common-law fraud and fraud under the statute. *Id.* at 272, 527 A.2d 875. The court asserted that the reasoning in *Spring Motors* was not controlling, because, in *Dreier,* the plaintiff was not only seeking to recover damages for purely economic loss, but also was seeking treble damages under the Consumer Fraud Act. *Id.* The court reasoned: "We do not read *Spring Motors* as intending to deprive a consumer of [the] statutory remedy simply because the transaction is controlled by the Uniform Commercial Code." *Id.* Thus, the court rejected the defendant's argument that the plaintiff's fraud claims were subsumed within the plaintiff's claim for breach of warranty. *Id.* It should be noted that the parties in *Dreier,* unlike those in the case before the court, included in their contract specifically bargained-for remedies for breach.

Moreover, the conclusion reached in this case is bolstered by the decision in *Perth Amboy Iron Works, Inc. v. American Home Assur. Co.,* 226 N.J.Super. 200, 543 A.2d 1020 (App.Div.1988), *aff'd,* 118 N.J. 249, 571 A.2d 294 (1990). Noting that under *Spring Motors* a plaintiff would be barred from pursuing damages for purely economic loss under claims for strict liability and negligence, the court explained that a plaintiff could recover punitive damages if the defendant's conduct was deemed fraudulent. *Id.* It should be pointed out that the New Jersey Supreme Court affirmed the decision "substantially for the reasons expressed in the opinion of the Appellate Division...." 118 N.J. at 251, 571 A.2d 294.

The court agrees with the result in *Perth Amboy Iron Works* because of the difference between the remedy provided for in a fraud cause of action and the remedy avail-

able in a breach of contract case. Generally, when a plaintiff successfully prosecutes a claim for breach of contract, the court will award compensatory damages to provide the aggrieved party with the "benefit of their bargain." *B.F. Hirsch, Inc. v. Enright Refining Co.*, 751 F.2d 628, 634 (3d Cir.1984) (citing *Donovan v. Bachstadt*, 91 N.J. 434, 453, 453 A.2d 160 (1982)). In all but a very limited class of cases punitive damages are not awarded for breach of contract. *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 141 N.J.Super. 437, 449, 358 A.2d 805 (App.Div.1976) ("In the absence of exceptional circumstances dictated by the nature of the relationship between the parties or the duty imposed upon the wrongdoer, the concept of punitive damages has not been permitted in litigation involving breach of a commercial contract."). On the other hand, when a plaintiff successfully prosecutes a fraud claim, often, the court will award punitive damages to punish the wrongdoer and to deter future misconduct. *Nappe v. Anschelewitz, Bass, Ansell & Bonello*, 97 N.J. 37, 55–56, 477 A.2d 1224 (1984) (O'Hern, J., concurring) (quoting *Leimgruber v. Claridge Assocs.*, 73 N.J. 450, 454, 375 A.2d 652 (1977) ("Punitive or exemplary damages are sums awarded apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future.")). Thus, while the causes of action for fraud and breach of contract may spring out of the same course of conduct, the remedies available for such conduct are different.

In support of his argument that plaintiff may not recover tort damages, defendant cites *Werner & Pfleiderer Corp. v. Gary Chem. Corp.*, 697 F.Supp. 808 (D.N.J.1988). In *Werner*, the court dismissed a commercial party's claims for common-law fraud and fraud under the New Jersey Consumer Fraud Act. *Id.* at 815. The court reasoned that "the Consumer Fraud Act must be interpreted in light of the New Jersey Supreme Court holding in *Spring Motors* and its articulated policy of restricting the rem-

edies available to commercial entities involved in a dispute *which is essentially contractual in nature, and the disputed performance is covered by the contract.*" *Id.* (emphasis added).

*Werner* was a classic breach of contract case. The court noted that the remedies for breach were "carefully negotiated" and specifically enumerated in the contract. *Id.* The court explained that because such remedies were available, the plaintiff could not pursue tort damages. *Id.*

The facts of the case at bar are very different than the facts of *Werner*. In the case before the court, there is no remedy specifically provided for by the contract. More importantly, it is the court's opinion that the plaintiff's primary cause of action in this case is a claim for fraud, rather than for breach of contract. This is true because of the unusual nature of the transaction between First Valley, Pagano and Goushy. Thus, this case is distinguished from *Werner*, because the dispute in this case is not "essentially contractual in nature."

Similarly, the dispute in *Unifoil Corp. v. Cheque Printers and Encoders, Ltd.*, 622 F.Supp. 268 (D.N.J.1985), was a dispute "essentially contractual in nature." In *Unifoil*, the court dismissed the commercial entities' fraud claim. *Id.* at 270. The court stated:

> On the fraud claim, Cheque Printers argues that *Spring Motors* does not directly address allegations of intentionally tortious conduct. That is true; but the reasoning of *Spring Motors* leads us to conclude that, as between commercial parties, New Jersey will not countenance such claims.

*Id.*

While candor prevents the court from attempting to distinguish on its facts the *Unifoil* court's expansive reading of *Spring Motors*, it should be noted that *Unifoil* was a breach-of-warranty case very similar to the *Spring Motors* case. Similarly, *Unifoil* did not have a factual scenario which reeked of bad faith, like the one presented to this court. Nevertheless,

for the reasons enumerated above, the court must respectfully disagree with the *Unifoil* Court's broad interpretation of *Spring Motors.*

Accordingly, it is the court's opinion that if the New Jersey Supreme Court were presented with the facts of this case, it would permit the plaintiff to pursue its claims for tort damages. Therefore, the court must address plaintiff's claims for common-law fraud and for fraud under the New Jersey Consumer Fraud Act.

## V. *Fraud*

As previously discussed, plaintiff alleges that defendant committed fraud by submitting an invoice to plaintiff for payment which contained a listing of items that defendant did not own and, therefore, could not sell. To sustain a cause of action for fraudulent misrepresentation under New Jersey law, the following elements must be proven:

> (1) a material misrepresentation of a presently existing or past fact; (2) made with knowledge of its falsity by the person making the misrepresentation; (3) intent that the misrepresentation be relied upon; (4) reliance on the misrepresentation, and (5) damage to the party who relied on the misrepresentation.

*B.F. Hirsch, Inc. v. Enright Refining Co.,* 577 F.Supp. 339, 343 (D.N.J.1983), *aff'd in part and vacated in part,* 751 F.2d 628 (3d Cir.1984) (citing *Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624, 432 A.2d 521 (1981)). Because the plaintiff has failed to establish conclusively the "scienter" requirement of the tort, the third element of the test, summary judgment must be denied.

The first two elements of the test are clearly established by the facts of this case. Defendant argues that because he did not affirmatively state on the invoice that he owned all of the equipment, he did not make a misrepresentation. The court disagrees. Defendant submitted an invoice to plaintiff containing twenty-six items. Yet defendant held good, marketable title to only eight of the items. Thus, despite the fact that Goushy did not own eighteen of the items enumerated on the invoice, the defendant submitted a bill to the plaintiff for all of the items. It is evident that any reasonable jury would conclude that this submission constituted a material representation of a presently existing fact made with knowledge of its falsity.

Plaintiff, however, has failed to demonstrate that defendant possessed the requisite intent needed to establish a fraud claim. As stated above, the plaintiff must show that the defendant intended to defraud the plaintiff. *Jewish Center,* 86 N.J. at 624–25, 432 A.2d 521. This intent, known as the "scienter" element of the fraud claim can be proven by demonstrating a) that the defendant knew of the falsity and b) that he intended "to obtain an undue advantage therefrom." *Id.* Hence, while it is clear that Goushy knew that he did not own all of the items listed on the invoice, it is not clear whether he submitted the invoice "to obtain undue advantage therefrom."

Goushy testified during deposition that he was told by Pagano's representative, Fred Marino, to include all of the items on a single invoice. Plaintiff's Exh. C, Goushy Deposition, p. 23. When asked why this was done, Goushy responded: "I was not told. I didn't ask and I was not told, but I did do it for him." Subsequently, Goushy testified that he included the items on the invoice because he believed that this was the "arrangement" that had been set up between Pagano and First Valley. *Id.* at p. 41. While the court finds the defendant's testimony less than credible, especially in light of the fact that Goushy never once contacted First Valley, his statement creates a fact question concerning whether Goushy intended to obtain an unfair advantage over plaintiff, or whether he was merely a pawn in Pagano's scheme to defraud First Valley. Therefore, because there is a fact question concerning the issue of whether defendant intended to defraud the plaintiff, the court must deny plaintiff's motion for summary judgment on the fraud claim. Accordingly, it is unnecessary for the court to discuss the other two elements of the tort.

### VI. *Consumer Fraud Act*

Because of the availability of treble damages under the statute, N.J.S.A. § 56:8–19, plaintiff seeks to hold defendant liable under the New Jersey Consumer Fraud Act.[1] *Id.* at § 56:8–1 et seq. For the most part, the elements of the statutory cause of action mirror the elements of the common-law fraud cause of action. *See id.* at § 56:8–2. Accordingly, the court need not examine the elements of the tort in the statutory context. Thus, for the reasons enumerated above, the court must deny plaintiff's motion for summary judgment on the plaintiff's claim under the statute because the plaintiff has not established that the defendant possessed the requisite intent to defraud.

### VII. *Conclusion*

The plaintiff's motion for summary judgment is granted with respect to plaintiff's claim for breach of contract. Additionally, the court holds that because of the nature of the facts presented in this case, the commercial plaintiff will be permitted to pursue the commercial defendant for tort damages. The plaintiff's motion for summary judgment on its claim for common-law fraud and for fraud under the New Jersey Consumer Fraud Act, however, will be denied because there is a fact question concerning the issue of whether the defendant intended to defraud the plaintiff. An order accompanies this opinion. No costs.

THIS MATTER having come before the court on motion for summary judgment filed by plaintiff, First Valley Leasing, Inc.; and the court having considered the written submissions and oral argument of counsel; and good cause appearing,

IT IS on this 18th day of June, 1992,

ORDERED that plaintiff's motion be and hereby is granted with respect to its claim for breach of contract, and denied with respect to its claims for common law fraud and fraud; and it is further

ORDERED that, because of the nature of the facts presented in this case, the commercial plaintiff will be permitted to pursue the commercial defendant for tort damages.

---

1. As previously noted a corporation may sue under the Consumer Fraud Statute. *Dreier Co. v. Unitronix Corp.,* 218 N.J.Super. 260, 272, 527 A.2d 875 (App.Div.1986). *See also Hundred East Credit Corp. v. Eric Schuster Corp.,* 212 N.J.Super. 350, 515 A.2d 246 (App.Div.1986).