**UNIFOIL CORPORATION, Plaintiff,**

v.

**CHEQUE PRINTERS AND ENCODERS LIMITED, Defendant,**

**and**

**Aluminum Company of America, Third-Party Defendant.**

**Civ. A. No. 84–345.**

United States District Court, D. New Jersey.

Nov. 26, 1985.

Waldman, Renda & McKinney, Hawthorne, N.J., by Thomas A. McKinney, for plaintiff.

McCarter & English, Newark, N.J., by John L. McGoldrick, for defendant.

Stryker, Tams & Dill, Newark, N.J., by Edith K. Payne, for third-party defendant.

## OPINION

STERN, District Judge.

This opinion is rendered on the motion of the third-party defendant Aluminum Company of America ("Alcoa") to dismiss those crossclaims of defendant Cheque Printers and Encoders, Ltd. ("Cheque Printers") which allege fraud, breach of warranty of fitness, breach of warranty of merchantability, and punitive damages. This Court's jurisdiction is based on the diversity of citizenship of the parties; New Jersey law applies.

## FACTS

Cheque Printers, an Australian company, purchased a product called "foilboard" from Unifoil, a New Jersey corporation for use in manufacturing "instant-winner" lottery tickets. Some of the tickets were defective, so that scratching the covering removed the prize information as well. At least one lottery had to be cancelled. Cheque Printers alleges that it suffered severe losses due to the need to recall the defective tickets from Australian lottery commissions.

The foilboard was made with aluminum foil purchased by Unifoil from Alcoa. Cheque Printers alleges that the foil was not "A-wettable"—that is, that its surface was slightly greasy—and that for this reason coating materials did not adhere to it properly. After discovery showed that Unifoil had specified A-wettable foil in its order from Alcoa, and that at least one Alcoa employee knew that the foil was not A-wettable, Cheque Printers moved to amend its answer to include crossclaims alleging fraud, breach of warranty of fitness for a particular purpose, breach of warranty of merchantability, and to demand punitive damages. The motion to amend was granted under the liberal standard of Rule 15(b) of the Federal Rules of Civil Procedure. Alcoa now moves to dismiss these counterclaims, pursuant to Rule 12(b)(6). For the purposes of this motion, of course, all allegations made in the crossclaims are taken as true. All that is at issue is whether these allegations state a valid claim under the applicable law.

## DISCUSSION

### I. Cheque Printer's Fraud Claim.

Cheque Printers alleges the following facts:

1) Under its contract with Unifoil, Alcoa was required to supply Unifoil with A-wettable foil.

2) Alcoa supplied foil which was not A-wettable.

3) Alcoa knew that the foil was not A-wettable.

4) Cheque Printers manufactured defective lottery tickets from the Unifoil foilboard and sold them to Australian lottery commissions.

5) Cheque Printers was obliged to recall the tickets and suffered economic injury as a result.

Cheque Printers' attempt to raise claims of fraud and negligent misrepresentation against Alcoa on these facts raises an interesting question: when—if at all—may a remote purchaser of a defective product recover from the manufacturer in tort, and when—if at all—in contract? The New Jersey Supreme Court has recently treated this question at length in *Spring Motors Distributors, Inc. v. Ford Motor Company*, 98 N.J. 555, 489 A.2d 660 (1985). Although the *Spring Motors* decision undoubtedly will be fleshed out in future cases, the opinion clearly indicates that when the remote purchaser is a commercial buyer suffering an economic loss, claims sounding in tort will not be heard; but claims based on an intermediate buyer's contractual rights will lie, in spite of the fact that the remote purchaser is not in privity with the manufacturer.

*Spring Motors* concerned a leasing company which purchased a number of Ford trucks equipped with Clark transmissions. The transmissions were defective, and Spring Motors lost a considerable sum on its leases of the trucks. The New Jersey Supreme Court ruled that Spring Motors could not recover from Clark on theories of either strict liability or negligence. It could, however, assert contractual claims under the warranty provisions of the Uniform Commercial Code.

New Jersey does permit recovery in tort for economic loss suffered by an ultimate consumer, *Santor v. A.C.M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

But *Spring Motors* holds that *Santor* does not apply to commercial buyers, 98 N.J. at 575, 489 A.2d 660. There, the relatively equal bargaining power of the parties and the better ability of the parties to gauge their ability to bear risk lead to the conclusion that contractual remedies are adequate.

New Jersey law also permits tort recovery for product defects which give rise to claims of either personal injury or property damages, *e.g.*, *Monsanto Co. v. Alden Leeds, Inc.*, 130 N.J.Super. 245, 326 A.2d 90 (Law Div.1974); *Pabon v. Hackensack Auto Sales*, 63 N.J.Super. 476, 164 A.2d 773 (App.Div.1960). These cases are held not to extend to purely economic loss. 98 N.J. at 578, 489 A.2d 660.

*Spring Motors* explicitly holds that a remote purchaser's tort claims for economic loss will not be heard, even if negligence is alleged, 98 N.J. at 579, 489 A.2d 660. Thus, Cheque Printers' crossclaim for negligent misrepresentation must be dismissed.

On the fraud claim, Cheque Printers argues that *Spring Motors* does not directly address allegations of intentionally tortious conduct. That is true; but the reasoning of *Spring Motors* leads us to conclude that, as between commercial parties, New Jersey will not countenance such claims:

The demarcation of duties arising in tort and those arising in contract is often indistinct, but one difference appears in the interest protected under each set of principles. Prosser & Keeton, *supra*, § 92 at 655–56. The purpose of a tort duty of care is to protect society's interest in freedom from harm, *i.e.*, the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising

out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

98 N.J. at 579–80, 489 A.2d 660.

Cheque Printers also argues that case law demonstrates that an action for fraud will lie, even in the presence of a contract. But such cases deal with fraud in the inducement, not the performance, of a contract, *e.g., Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 432 A.2d 521 (1981). This Court, moreover, has construed the law of New Jersey to prohibit fraud claims when the "fraud contemplated by the plaintiff … does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself." *Foodtown v. Sigma Marketing Systems, Inc.,* 518 F.Supp. 485, 490 (D.N.J. 1980) (alleged misrepresentation of costs contractually passed through to plaintiff is ground for claim of breach of contract, but not of fraud).

Cheque Printers' crossclaims based on fraud and intentional misrepresentation, therefore, must be dismissed.

## II. Cheque Printers' Claim of Breach of Implied Warranty of Fitness for a Particular Purpose.

The Uniform Commercial Code, codified at N.J.S.A. § 12A:2–315, describes the implied warranty of fitness for a particular purpose in the following words:

> Where a seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Cheque Printers attempts to make out a claim under the provision by asserting that Alcoa knew what the foil was to be used for and that it, Cheque Printers, relied on Alcoa's skill in providing suitable foil. Al-

coa responds that Cheque Printers was not in privity with Alcoa, and so, under traditional contract principles, cannot rely on this warranty.

Both parties seem to misconstrue the statutory provision. It is not Cheque Printers but Unifoil who is the buyer with whom the seller, Alcoa, contracted. There is no allegation that Unifoil relied on Alcoa to provide suitable goods, as is required to create an implied warranty of fitness. Thus no viable claim has been asserted under the statute.

I will add that, had Cheque Printers alleged such reliance on the part of Unifoil, I would have been inclined to deny Alcoa's motion to dismiss this claim. It is true that *Pawelec v. Digitcom, Inc.,* 192 N.J.Super. 474, 477–78, 471 A.2d 60 (App.Div.1984), observed in passing that while privity was not required in the context of warranties of merchantability, it could not be dispensed with in a claim asserting a breach of a warranty of fitness. It is also true that the *Spring Motors* court expressly declined to comment on the viability of *Pawelec,* even as it ruled that privity is not in fact required for claims concerning an implied warranty of merchantability.

I read *Spring Motors,* however, to say that remote commercial purchasers—although they are denied tort remedies—are to be permitted to assert the contractual rights of intermediate parties regardless of traditional conceptions of privity. After discussing the possible applicability of strict liability and warranty theories to persons down the distributive chain, the court observed, "the problem is ascertaining where on the spectrum to place a cause of action brought by a commercial entity, or even a consumer, for purely economic loss." 98 N.J. at 571, 489 A.2d 660. The court did not suggest that such purchasers should have no remedy at all.

In addition, the court justified its decision to eliminate privity in the context of warranty of merchantability by citing *Aronsohn v. Mandara,* 98 N.J. 92, 484 A.2d 675 (1984), which predicated the right of a

subsequent homeowner to sue the builder on an implied covenant to the original owner. It said: "[O]ur decision in *Aronsohn* creating an implied assignment of contract rights to a subsequent purchaser comports with the present decision to abolish vertical privity and to allow an ultimate purchaser to sue a remote manufacturer under the Code." 98 N.J. at 588, 489 A.2d 660. This analysis applies equally well to warranties of fitness.

Alcoa's objections to the abolition of privity in this context focus on the lack of contact and communication between the remote purchaser and the manufacturer. As the remote purchaser may assert only the rights of the immediate purchaser, which does have contact with the manufacturer, the objections are inapposite.

The doctrinal trends evidenced by *Spring Motors* thus point to the extinction of the privity requirement in warranties of fitness. *See Becker v. Interstate Properties*, 569 F.2d 1203, 1206 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). I would have been required to allow Cheque Printers to raise a claim based on a warranty of fitness impliedly made by Alcoa to Unifoil, had such a claim been pleaded. Because Cheque Printers has failed to plead Unifoil's reliance on Alcoa's expertise, however, the crossclaim must be dismissed. Of course, if Cheque Printers believes it can allege facts sufficient to state the claim properly, the Court will entertain a motion to amend the pleadings.

### III. Cheque Printers' Claim of Breach of Implied Warranty of Merchantability.

Cheque Printers alleges Alcoa's breach of an alleged implied warranty of merchantability to Unifoil. This is exactly the sort of claim recognized by *Spring Motors*. Alcoa raises as a defense that the sales order for the foil contained a printed disclaimer of this warranty.

■ The short answer to this argument is that motions to dismiss are to be decided purely on the pleadings. If Alcoa had wanted to introduce matters outside the pleadings, such as the sales order, it should have made a motion for summary judgment.

■ In order to alleviate the delay that would be incurred by requiring Alcoa to make yet another motion on this point, I will note that there is a factual issue concerning the sales order which, given the materials presently put before this Court, would preclude the granting of summary judgment.

It appears from the face of the sales order that it was typed up at Alcoa, by an Alcoa employee, and not by Unifoil. (For example, the order specifies that "Cust. requests we not use A.B.F. Trucking.") There is no indication, therefore, that Unifoil ever saw the sales order or was aware of the disclaimer. *Pawelec*, 192 N.J.Super. at 479, 471 A.2d 60 (disclaimer not seen by buyer not effective). Furthermore, the sales order has typed on it: "Foil must be A-wettable. This is absolutely critical." This requirement raises a question of fact as to the actual agreement between Alcoa and Unifoil, which perhaps supersedes the pre-printed disclaimer. Had a motion for summary judgment been made, therefore, I would have been constrained to deny it.

### IV. Cheque Printers' Punitive Damages Claim.

■ Cheque Printers demands punitive damages on its fraud, negligent misrepresentation, and warranty claims. As the fraud and negligence claims are hereby dismissed, there is no need to determine whether punitive damages on such claims are available. As to warranty, it is theoretically possible to obtain punitive damages on a contract claim, given sufficiently "aggravated circumstances." *Sandler v. Lawn-A-Mat Chemical and Equipment Corp.*, 141 N.J.Super. 437, 449, 358 A.2d 805 (1976); *Mayer v. Development Corp. of America*, 541 F.Supp. 828, 829, 862 (D.N.J.1981). *Kubiak v. Allstate Insurance Co.*, 198 N.J.Super. 115, 486 A.2d 879 (1984), cited by Alcoa at oral argument,

does not hold otherwise. Cheque Printers' demand for punitive damages, therefore, may not be disposed of on a motion to dismiss.