274 N.J. Super. 171 (1994)
643 A.2d 649
COASTAL GROUP, INC., PLAINTIFF-APPELLANT,
v.
DRYVIT SYSTEMS, INC. AND TECH 21 PANEL SYSTEMS, INC., DEFENDANTS-RESPONDENTS. AND FAB TECH, INC., DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT,
v.
CHASE MANHATTAN BANK, N.A., FIDELITY AND DEPOSIT COMPANY OF MARYLAND, PATRICIA LAROCCA AND KAREN STROBER, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
June 23, 1994.
*173 Before Judges SKILLMAN, KESTIN and WEFING.
Carol J. Kronman, attorney for appellant Coastal Group, Inc.
*174 Edwards & Angell, attorneys for respondents Dryvit Systems, Inc. and Tech 21 Panel Systems, Inc. (Andrew P. Fishkin, of counsel and on the brief).
Charles W. Schwartzberg, attorney for respondent Fab Tech, Inc.
The opinion of the court was delivered by SKILLMAN, J.A.D.
Plaintiff is the developer and owner of a condominium project in Weehawken known as Riva Pointe. According to plaintiff, its architect recommended that it use a Dryvit Composite Panel System, which consists of large prefabricated panels, for its exterior wall system. However, representatives of defendants Dryvit Panel Systems, Inc. and Tech 21 Panel Systems, Inc. (collectively referred to in this opinion as Dryvit)[1] allegedly represented to plaintiff that a new system consisting of smaller prefabricated panels, called the Fedderlite Panel System, would be less expensive and easier to install. Consequently, plaintiff agreed to purchase panels used in the Fedderlite system for use in its Riva Pointe project.
Plaintiff also entered into a contract with defendant Fab Tech, Inc. (Fab Tech) to install its exterior wall system. This contract involved both the installation of the Dryvit-manufactured Fedderlite system and the engineering, fabrication and erection of a lightgauge steel framing system to support the Fedderlite panels. Plaintiff terminated its contract with Fab Tech in May 1990.
Plaintiff subsequently brought this action alleging that Fab Tech had breached the contract in various respects. Fab Tech counterclaimed, alleging that plaintiff had wrongfully terminated the contract and had breached in various other respects, including *175 requiring Fab Tech to install the Fedderlite system which, according to Fab Tech, had been improperly designed and manufactured.
Thereafter, plaintiff filed an amended complaint which, among other things, added Dryvit as a defendant, charging it with fraud, misrepresentation and violation of the Consumer Fraud Act based on its allegedly false representations that the Fedderlite system was both inexpensive and easy to install. Plaintiff alleged that it had been induced by these representations to use the Fedderlite system instead of the Composite system originally specified by its architect. Plaintiff further alleged that Dryvit had invited plaintiff's representatives to see projects in several other states and had falsely represented that these projects contained the Fedderlite system. Plaintiff maintained that, contrary to Dryvit's assurances, the Fedderlite system had proven very expensive, had delayed work on the project and had resulted in it sustaining substantial losses. Plaintiff's amended complaint also contained a count which alleged that Dryvit had been negligent in the design, manufacture and sale of the Fedderlite system.
Two weeks after answering the amended complaint, Dryvit filed a motion for summary judgment. Dryvit argued that, even assuming plaintiff's allegations were true, its amended complaint failed to state a claim against Dryvit because, under Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985), one commercial entity may not recover in tort for economic losses allegedly caused by a product purchased from another commercial entity. Dryvit also argued that plaintiff's claim under the Consumer Fraud Act should be dismissed because the Act does not apply to products, such as the Fedderlite system, which are not available to the average consumer.
The trial court issued a written opinion, dated March 12, 1992, agreeing with Dryvit's arguments, and entered an order granting summary judgment in favor of Dryvit. After unsuccessfully attempting to take an interlocutory appeal from the dismissal of its fraud, misrepresentation and Consumer Fraud Act claims, plaintiff filed a motion on January 15, 1993, seeking, among other things, *176 leave to file a second amended complaint asserting a cause of action against Dryvit under the Uniform Commercial Code (UCC) on the ground that the Fedderlite system did not conform to Dryvit's warranties and representations. The trial court denied this motion as untimely.
The case was tried before a jury solely on Fab Tech's breach of contract claim. The jury found that plaintiff had breached the contract and returned a verdict for $225,000 in favor of Fab Tech. The trial court also awarded Fab Tech $41,968.16 in prejudgment interest.
Plaintiff appeals from the dismissal of its fraud, misrepresentation and Consumer Fraud Act claims and from the denial of its motion to file an amended complaint against Dryvit asserting a breach of warranty claim under the UCC. It also appeals from the trial court's denial of its motion to dismiss Fab Tech's counterclaim on the ground that Fab Tech had filed for bankruptcy and its trustee had failed to pursue this claim.
We conclude that the trial court erred in dismissing plaintiff's claims of fraud, misrepresentation and violation of the Consumer Fraud Act. Since this requires us to reverse the dismissal of plaintiff's complaint against Dryvit, we further conclude that the interests of justice require that plaintiff be permitted to amend its complaint to assert a claim against Dryvit for breach of warranty under the UCC. We affirm the judgment and award of prejudgment interest in favor of Fab Tech.

I
In dismissing plaintiff's claim for fraud and misrepresentation,[2] the trial court relied upon the Supreme Court's decision in *177 Spring Motors Distributors, Inc. v. Ford Motor Co., supra, which held that a commercial buyer seeking damages for economic losses resulting from the purchase of defective goods may recover solely for breach of warranty under the UCC and not for negligence or strict liability:
[A] seller's duty of care generally stops short of creating a right in a commercial buyer to recover a purely economic loss. Thus viewed, the definition of the seller's duty reflects a policy choice that economic losses inflicted by a seller of goods are better resolved under principles of contract law. In that context, economic interests traditionally have not been entitled to protection against mere negligence.
....
... As among commercial parties in a direct chain of distribution, contract law, expressed here through the U.C.C., provides the more appropriate system for adjudicating disputes arising from frustrated economic expectations.
[98 N.J. at 579-80, 489 A.2d 660.]
Although the trial court correctly relied upon Spring Motors in dismissing plaintiff's negligence claim, a ruling which plaintiff does not challenge, the court erred in precluding plaintiff from pursuing its claim for fraud and misrepresentation. Spring Motors only precludes claims brought under tort principles which are inconsistent with the remedies authorized under the UCC, see id. at 577-78, 489 A.2d 660; however, the UCC expressly preserves a buyer's right to maintain an action for fraud and misrepresentation. N.J.S.A. 12A:1-103 provides that "[u]nless displaced by the particular provisions of this Act, ... the law relative to ... fraud [and] misrepresentation ... shall supplement [the UCC's] provisions." In addition, N.J.S.A. 12A:2-721 provides that "[r]emedies for material misrepresentation or fraud include all remedies available under [the UCC] for non-fraudulent breach." "Thus, an action based on facts showing fraudulent conduct or material misrepresentation may be redressed by an action [in tort] for fraud or [a contract action for] nonfraudulent breach, and there is no need to elect." 3 William D. Hawkland, Uniform Commercial *178 Code Servs. § 2-721:01 at 461 (1993); see also City Dodge, Inc. v. Gardner, 232 Ga. 766, 208 S.E.2d 794, 796-97 (1974).
The trial court relied upon two federal district court decisions, Werner & Pfleiderer Corp. v. Gary Chem. Corp., 697 F. Supp. 808, 814-15 (D.N.J. 1988) and Unifoil Corp. v. Cheque Printers & Encoders, Ltd., 622 F. Supp. 268, 270-71 (D.N.J. 1985), in concluding that plaintiff's claim for fraud and misrepresentation was barred by the UCC. In Unifoil, the district court concluded, without citation to N.J.S.A. 12A:1-103 or N.J.S.A. 12A:2-721, that "the reasoning of Spring Motors leads us to conclude that, as between commercial parties, New Jersey will not countenance" intentional tort claims, including those couched in terms of fraud. 622 F. Supp. at 270. Likewise, in Werner & Pfleiderer, the district court, relying upon Unifoil, concluded that a fraud claim could not be maintained "in the context of a contract dispute between two commercial entities with relatively equal bargaining power." 697 F. Supp. at 814. However, both Unifoil and Werner & Pfleiderer were based on an overly expansive reading of Spring Motors, which is inconsistent with the provisions of N.J.S.A. 12A:1-103 and N.J.S.A. 12A:2-721 as well as with state decisional law. In Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super. 200, 227, 543 A.2d 1020 (App.Div. 1988), aff'd o.b., 118 N.J. 249, 571 A.2d 294 (1990), the Court held that a commercial buyer of goods in a transaction governed by the UCC may seek punitive damages for an alleged fraud.[3] Subsequently, in D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 686, 619 A.2d 689 (App.Div. 1993) we held, citing Perth Amboy Iron Works, that under N.J.S.A. 12A:1-103 "[t]he [UCC] preserves non-Code claims for fraud." See also Delgozzo v. Kenny, 266 N.J. Super. 169, 183, 628 A.2d 1080 (App.Div. 1993) (noting that under N.J.S.A. 12A:1-103 *179 the UCC does not "preempt" either common law fraud or Consumer Fraud Act claims). Moreover, another federal district court has expressed its disagreement "with the Unifoil Court's broad interpretation of Spring Motors," First Valley Leasing, Inc. v. Goushy, 795 F. Supp. 693, 701 (D.N.J. 1992), and has expressly held that a fraud claim may be maintained with respect to a contract governed by the UCC. Id. at 697-701. Therefore, we conclude that the trial court erred in dismissing plaintiff's claim against Dryvit for fraud and misrepresentation.

II
The Consumer Fraud Act declares it to be an unlawful practice for "any person" to use an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact ... in connection with the sale or advertisement of any merchandise." N.J.S.A. 56:8-2. "Person" is defined broadly to include any natural person, partnership, corporation or company. N.J.S.A. 56:8-1(d). "Sale" is also defined broadly to include "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1(e). "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).
In Hundred East Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 355-57, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60, 526 A.2d 146 (1986), we held that the protections of the Consumer Fraud Act extend to the purchase of merchandise for use in business operations:
Nothing in [the] statutory language suggests that the Act is inapplicable to the sale of merchandise for use in business operations. To the contrary, the language on its face makes the Act applicable to all sales of "merchandise" without regard to its intended use or the nature of the buyer. And a corporation or other business entity is a "person" entitled to sue under the Act....
... The term "consumer" is only occasionally used, and is not defined, in the Act; its generally recognized meaning is "one who uses (economic) goods, and so diminishes or destroys their utilities." ...

*180 Surely a business entity can be, and frequently is, a consumer in the ordinary meaning of that term. Since a business entity is also a "person" entitled to recover under the Act, there is no sound reason to deny it the protection of the Act. There is similarly no justification to limit the Act ... to sales and advertising of merchandise for "personal, family or household use." Such a reading would fly in the face of the statutory definitions of "merchandise" and "person" entitled to sue.
... [W]e are satisfied that reading the statutory language to include business entities and business merchandise advances the legislative aim of protecting consumers from unlawful practices.
Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate. Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers. It may well be, of course, that certain practices unlawful in a sale of personal goods to an individual consumer would not be held unlawful in a transaction between particular business entities; the Act largely permits the meaning of "unlawful practice" to be determined on a case-by-case basis. But to exclude business entities from any protection of the Act would contravene its manifest purpose as well as its unambiguous language.
Accord Dreier Co., Inc. v. Unitronix Corp., 218 N.J. Super. 260, 272-73, 527 A.2d 875 (App.Div. 1986).
Therefore, we conclude that the trial court erred in granting Dryvit summary judgment dismissing plaintiff's claim under the Consumer Fraud Act. We note, however, that plaintiff must show more than a simple breach of warranty to be entitled to prevail on this claim. D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 25-26, 501 A.2d 990 (App.Div. 1985).

III
Since this case must be remanded to the trial court to permit plaintiff to pursue its claims of fraud, misrepresentation and violation of the Consumer Fraud Act, we believe that the interests of justice will be served by also allowing plaintiff to amend its complaint to assert a claim against Dryvit under the UCC. Even assuming that the trial court did not abuse its discretion in denying plaintiff's motion to amend its complaint to assert its UCC claim, our reversal of the dismissal of plaintiff's other claims requires reconsideration of that procedural ruling. *181 The parties will be required on remand to conduct discovery and other pretrial proceedings relating to plaintiff's fraud claims against Dryvit. It would not impose an undue burden or be unfair to Dryvit to allow plaintiff also to pursue its claim under the UCC, since these claims are based on closely related factual allegations. Cf. City of Jersey City v. Hague, 18 N.J. 584, 602, 115 A.2d 8 (1955) ("Broad power of amendment is contemplated by the rules ... at any stage of proceedings, and is permitted except when justice to a party prejudiced thereby requires that it be forbidden.").

IV
Plaintiff argues that the judgment in favor of Fab Tech on its counterclaim should be reversed because Fab Tech's bankruptcy trustee never "assumed" the claim against plaintiff. However, Fab Tech's bankruptcy petition was dismissed on March 11, 1991. Therefore, any rights which the bankruptcy trustee may have had during the bankruptcy proceedings reverted to Fab Tech prior to the trial in April 1993. See 11 U.S.C.A. § 349(b). We have no need to decide whether the bankruptcy trustee would have had to intervene to pursue Fab Tech's counterclaim in the event the bankruptcy proceedings had continued. See Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 376-77, 164 A.2d 607 (App.Div. 1960).

V
Finally, plaintiff argues that the trial court erred in awarding prejudgment interest to Fab Tech. However, prejudgment interest may be awarded on contract claims in accordance with equitable principles. Bak-A-Lum Corp. of Am. v. Alcoa Building Prods., Inc., 69 N.J. 123, 131, 351 A.2d 349 (1976). A reviewing court should not disturb an exercise of discretion involving an award of prejudgment interest unless it represents a manifest denial of justice. A.J. Tenwood Assocs. v. Orange Senior Citizens Housing Co., 200 N.J. Super. 515, 525, 491 A.2d 1280 *182 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985). "Moreover, the rule that limited prejudgment interest awards to cases where damages were liquidated or clearly ascertainable in advance has been significantly eroded." Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d 1063 (1988). Based on the limited record before us, we perceive no abuse of discretion in the trial court's award of prejudgment interest to Fab Tech.
Accordingly, we reverse the order of the trial court dismissing plaintiff's claims against Dryvit for fraud, misrepresentation and violation of the Consumer Fraud Act. In addition, we direct that plaintiff be allowed to file an amended complaint asserting a claim against Dryvit under the UCC. We affirm the judgment in favor of Fab Tech.
NOTES
[1] Dryvit is the parent corporation which manufactures the wall panels and Tech 21 is a subsidiary which acts as a supplier of these products. These corporations are treated as a single entity for purposes of this opinion.
[2] Although plaintiff asserts claims for both "fraud" and "misrepresentation," we perceive no difference between these torts, at least under the circumstances of this case. Indeed, the second Restatement of Torts considers them to be a single tort, called "fraudulent misrepresentation." Restatement (Second) of Torts § 525 (1977); see Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981).
[3] The Third Circuit Court of Appeals has described the conflict between, on the one hand, Unifoil and Werner & Pfleiderer and, on the other hand, Perth Amboy Iron Works, as a "morass." Vanguard Telecommunications, Inc. v. Southern New England Tel. Co., 900 F.2d 645, 654 (3d Cir.1990); see also John J. Sarno, Whither Tort Damages for Breach of Contract?, 131 N.J.L.J. 255 (May 25, 1992).