**FLORIAN GREENHOUSE, INC. (a New Jersey Corporation), Plaintiff,**

v.

**CARDINAL IG CORPORATION (a Minnesota Corporation), Defendant.**

**No. CIV. 97–869(WHW).**

United States District Court, D. New Jersey.

June 26, 1998.

---

Christopher McHattie, Johnson, Murphy, Hubner, McKeon, Wubbenhorst & Appelt, Riverdale, NJ, for Plaintiff.

Joseph Boyle, Richard Donovan, Kelley Drye & Warren, Parsippany, NJ, for Defendant.

## OPINION

WALLS, District Judge.

This matter arises from a commercial dispute between Florian Greenhouse, Inc. ("Florian") and Cardinal IG Corporation ("Cardinal"). Defendant Cardinal moves to dismiss Counts Three, Four, Five, and Six of the First Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b). It also moves to dismiss plaintiff's claim for punitive damages. Under Fed.R.Civ.P. 78, the Court decides this motion without oral argument by counsel. For the following reasons, defendant's motion is denied.

### Factual and Procedural Background

For the purposes of this motion to dismiss, the Court accepts as true all allegations in the First Amended Complaint.

Plaintiff Florian is a New Jersey manufacturer and distributor of greenhouses and solarium products for resale and installation. First Amended Compl. ¶¶ 1, 5. Defendant Cardinal is a manufacturer of glass products and is incorporated in Minnesota. *Id.* ¶¶ 1, 6. The Court exercises diversity jurisdiction over this matter.

In August 1996, Florian expressed interest in purchasing Cardinal's new glass product, LoE ²®, which had performance specifications superior to other available products. *Id.* ¶ 9. The parties commenced negotiations regarding pricing and delivery. *Id.* ¶ 11. Florian informed Cardinal that if they were to reach an agreement, Florian would revise its catalogs and marketing plans to feature Cardinal's glass and the product performance advancements that it would make possible. *Id.* ¶ 13. The parties reached a preliminary agreement on pricing and arranged for Cardinal representatives to travel to Florian's plant. *Id.* ¶ 14.

Representatives from both companies met on September 18 to discuss a wide variety of topics, including Cardinal's arrangement to exclusively supply one particular coating to Four Seasons Solar Products Corporation ("Four Seasons"), one of Florian's competitors. *Id.* ¶ 21. Florian alleges that Cardinal represented that it was "the coating that Four Seasons had an exclusive on" and "not any particular glass." *Id.* ¶ 22. According to the complaint, Cardinal also stated that the Four Seasons coating "only impacted on the 'color' of the glass," the "performance [would] be very very close" to Cardinal's other standard glasses, and Cardinal would be "able to sell all of those products to Florian." *Id.* Cardinal assured Florian that its arrangement with Four Seasons would not present any obstacle to the supply of glass to Florian. *Id.* ¶ 23.

The parties also discussed other issues such as pricing, quantities, delivery times, stocking programs, terms of payment, and other ancillary services Cardinal would provide. *Id.* ¶ 24. After comparing various samples, Florian entered into an agreement to purchase the LoE ²® Sun 171 and LoE ²® Sun 156 products from Cardinal. *Id.* ¶ 28. The defendant assured Florian that it would be able to fill all future orders. *Id.* ¶ 33. On September 19, Cardinal sent Florian a written confirmation of the basic terms of the agreement. *Id.* ¶ 41. Although Cardinal disputes the existence of such an agreement, the Court must read the complaint in the light most favorable to the plaintiff and assume that the parties entered into a contract.

Plaintiff contends that, in reliance on this contract, it altered its national advertising campaign to feature Cardinal's LoE ²® brand glass and edited all catalogs, brochures, and price lists accordingly. *Id.* ¶¶ 34–34. Florian distributed its revised catalog to architects, engineers, and builders throughout the

country. *Id.* ¶ 36. It also circulated advertising materials to its dealers and customers. *Id.* ¶ 37. As a result of these extensive solicitation efforts, Florian (1) received specifications that designated product lines requiring LoE $^{2®}$ glass; (2) received orders for products containing LoE $^{2®}$ glass; (3) began to build the new product lines with LoE $^{2®}$ glass; and (4) initiated sales of these new products. *Id.* ¶ 38.

Pursuant to the agreement, Florian ordered and received LoE $^{2®}$ glass through January 1997. *Id.* ¶¶ 42–43. On or about February 1, 1997, Cardinal stopped filling the orders. *Id.* ¶ 44. Three days later, Cardinal in writing informed Florian that it would make no further shipments. *Id.* ¶ 45. Cardinal contends that it ceased filling these orders when it realized that its contract with Four Seasons required it to supply the LoE $^{2®}$ Sun 171 and LoE $^{2®}$ Sun 156 products exclusively to Four Seasons.

On February 18, 1997, plaintiff filed a two-count complaint against Cardinal for breach of contract and promissory estoppel. Plaintiff sought specific performance of the alleged agreement as well as appropriate monetary relief. On February 24, 1998, Magistrate Judge Joel Pisano heard oral argument on plaintiff's motion to amend its complaint and granted leave to add five additional counts for tortious interference with contractual relations (Count Three), tortious interference with prospective economic advantage (Count Four), common law fraud (Count Five), consumer fraud (Count Six), and breach of the duty of good faith and fair dealing (Count Seven).[1] The First Amended Complaint also seeks punitive damages. Cardinal has asserted counterclaims alleging nonpayment for the goods, conversion, and violation of Section 43(a) of the Lanham Act.

## Legal Standard

On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the nonmoving party. *See Oshiver v. Levin, Fish-*

*bein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *See Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *See Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993); *Violanti v. Emery Worldwide A–CF Co.,* 847 F.Supp. 1251, 1255 (M.D.Pa.1994). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed.R.Civ.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## Analysis

In support of its motion to dismiss, Cardinal makes the following arguments: (1) Florian fails to state claims for tortious interference because the amended complaint does not allege that Cardinal was aware of the alleged contracts or prospective economic advantages with which it purportedly interfered; (2) Florian's fraud claims are deficient because they do not meet the particularity requirements of Fed.R.Civ.P. 9(b); (3) the tort claims are barred because plaintiff is limited to contractual remedies; and (4) the punitive damages claim must be dismissed because such relief is not appropriate in a breach of contract action among commercial parties.

As a preliminary matter, the Court notes that the magistrate judge addressed the sufficiency of the tort causes of action when he granted plaintiff leave to amend its complaint. In its opposition to the motion to amend, Cardinal argued that these claims

---

1. The magistrate judge did not permit the plaintiff to add a claim for "negligent caused economic injury."

were futile as a matter of law for similar reasons as those asserted here. The magistrate judge rejected defendant's position.

■ In its assessment of whether an amendment would be futile, a court applies the same standard of legal sufficiency as under Fed.R.Civ.P. 12(b)(6). *See Smith v. National Collegiate Athletic Ass'n,* 139 F.3d 180, 190 (3d Cir.1998); *Jablonski v. Pan American World Airways,* 863 F.2d 289, 292 (3d Cir.1988). Although defendant contends that the standard on a motion to amend is more lenient, this is clearly contrary to the law of this circuit. The magistrate judge specifically stated that he applied the 12(b)(6) standard when he rendered his decision. Transcript of February 24, 1998 Hearing ("Tr.") at 26.

■ Plaintiff argues that the magistrate judge's rulings on the viability of these claims constitute the law of this case and should bar this motion to dismiss. Plaintiff, however, fails to cite any case law in support of the proposition that a magistrate judge's decision to permit amendments precludes the district judge from independently adjudicating a later motion to dismiss the added counts. A defendant's right to have a district judge decide any dispositive motion on a *de novo* basis must be protected. *See* 28 U.S.C. § 636(b)(1)(A); Local Civ. R. 72.1(c)(2). Hence, the Court again reviews the legal sufficiency of the tort claims, taking into consideration the magistrate judge's decision, as though it were a Report and Recommendation to which defendant objects.

## I. *Whether the Allegations of Tortious Interference State a Claim*

■ In Counts Three and Four, plaintiff alleges that Cardinal intentionally and maliciously interfered with its contractual and prospective economic relations with independent contractor installers, suppliers, and customers. In evaluating the validity of these claims, the Court applies the substantive law of New Jersey. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Howell v. Celotex Corp.,* 904 F.2d 3, 4 (3d Cir.1990). To establish a prima facie case for tortious interference under New Jersey law, a plaintiff must prove (1) that it had an existing contract or reasonable expectation of economic benefit or advantage; (2) that the defendant knew of the contract or expectancy; (3) that the defendant wrongfully interfered with that contract or expectancy; (4) that it is reasonably probable that the loss of the contract or prospective economic gain was a result of the interference; and (5) that damages resulted from the interference. *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 186 (3d Cir.1992) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 563 A.2d 31 (1989)), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993); *Pitak v. Bell Atlantic Network Servs.,* 928 F.Supp. 1354, 1369 (D.N.J.1996). "[A] person cannot intentionally interfere with a contract that he knows nothing about. In order to subject someone to liability under this tort, the individual must have knowledge of the contract with which he allegedly interfered." *Major League Baseball Promotion Corp. v. Colour–Tex, Inc.,* 729 F.Supp. 1035, 1051 (D.N.J. 1990).

■ Defendant maintains that the amended complaint is deficient because it fails to allege that Cardinal knew of the alleged contracts or prospective economic advantages. Although the amended complaint does not specifically assert that Cardinal knew of Florian's existing or anticipated contracts with independent contractor installers, suppliers, and customers, the Court agrees with the magistrate judge's conclusion that it was implicit from the underlying facts that defendant was on notice of these transactions and the potential economic benefit that could result. Tr. at 22. The Court is required to accept as true all reasonable inferences that may be drawn from the allegations in the complaint. Plaintiff alleges that it informed Cardinal that it intended to feature LoE ²® glass products in its advertising and marketing materials. It is reasonable to infer that Cardinal knew that Florian, as a merchant, had formed contracts or was in the process of negotiating contracts to sell the finished products to customers. Termination of the supply of LoE ²® brand glass obviously could interfere with the performance of Florian's obligations and deprive it of its anticipated

economic benefit. Consequently, the Court rejects defendant's argument.[2]

### II. Whether Florian Plead the Fraud Claims with Sufficient Particularity

■ Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The purpose of the rule is to "place the defendant[ ] on notice of the precise misconduct with which [it] is charged, and to. safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). "[I]n applying [Rule 9(b) ], focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Christidis v. First Penn. Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983) (quoting 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1298, at 407 (1969)). The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading. *See* 5A Charles A. Wright and Arthur R. Miller, § 1298, at 648 (1990). "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville*, 742 F.2d at 791.

■ For the most part, plaintiff bases its common law fraud and New Jersey Consumer Fraud Act claims on the alleged misrepresentations made by defendant, through Jerry Beranek and its counsel, of the nature of the Four Seasons agreement and whether the exclusive arrangement would impede Cardinal's ability to supply LoE ²® glass to Florian. First Amended Compl. ¶¶ 81–88. Defendant complains that the allegations are deficient due to the failure to indicate when the misrepresentations occurred or what motivated Cardinal to make them. These arguments are without merit. Florian has indeed specified in its complaint and at the hearing before the magistrate judge that these statements were made in September 1996, just before the alleged agreement was finalized. *Id.* ¶¶ 22–23; Tr. at 20–21. Furthermore, at the pleading stage, plaintiff is not required to speculate as to the motivation of the defendant.

■ Defendant also points to the lack of facts to substantiate plaintiff's general allegation that Cardinal knew the representations concerning the Four Seasons agreement were false. This is not sufficient to warrant dismissal. It is reasonable to infer that a corporation would be familiar with the content of its sales contracts so that any inaccurate representation would be knowingly made.

Although Cardinal complains that the consumer fraud count merely recites statutory language, the count specifically incorporates by reference the specific alleged misrepresentations that support the common law claim. These same statements may also form the factual basis for a Consumer Fraud Act violation.

The Court finds that the claims are plead with sufficient particularity to permit Cardinal to prepare a responsive pleading. Florian has adequately plead the factual predicate for the claims by alleging the nature, context, and content of the misrepresentations. Whether defendant knowingly misrepresented information with the intent that Florian rely on it are matters to be fleshed out during discovery and at trial.

### III. Whether the Nature of this Action Limits Plaintiff to Contractual Remedies

. Cardinal argues that the tort claims are precluded because a commercial party who sues for breach of a sales contract may not recover tort damages for purely economic

---

**2.** Defendant also maintains that Florian failed to allege specific contracts or prospective contracts with which it interfered. These relationships, though, have been identified in plaintiff's Rule 26 disclosures.

loss. Defendant relies on three cases to support its position: *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660 (1985); *Werner & Pfleiderer Corp. v. Gary Chemical Corp.*, 697 F.Supp. 808 (D.N.J.1988); and *Unifoil Corp. v. Cheque Printers & Encoders, Ltd.*, 622 F.Supp. 268 (D.N.J.1985).

In *Spring Motors*, the New Jersey Supreme Court held that a commercial buyer's remedy for purely economic loss resulting from the sale of a defective product is under the Uniform Commercial Code ("UCC") for breach of warranty, not under the tort theories of strict liability or negligence. *See Spring Motors*, 98 N.J. at 578, 489 A.2d 660. The decision was in large part based on the distinction drawn by the court between tort and contractual principles:

> The purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damages that the parties have, or could have, addressed in their agreement.

*Id.* at 579–80, 489 A.2d 660.

*Spring Motors* addressed only the viability of strict liability and negligence claims in a breach of contract case. Defendant cites *Werner & Pfleiderer* and *Unifoil* for the proposition that New Jersey law prohibits all remedies grounded in tort in commercial contractual disputes where the plaintiff seeks recovery for purely economic losses. Like *Spring Motors*, both of these cases involve UCC breach of warranty claims arising from the sale of a defective product. In *Unifoil,* the district court dismissed a common law fraud charge stemming from the supply of a product that did not meet the specifications in the purchase order. *See Unifoil*, 622

F.Supp. at 271. The district court extended the rationale of *Spring Motors* to preclude fraud claims "when the 'fraud contemplated by the plaintiff ... does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself.'" *Id.* (quoting *Foodtown v. Sigma Marketing Systems, Inc.*, 518 F.Supp. 485, 490 (D.N.J.1980)). The court distinguished claims for fraudulent performance from claims for fraudulent inducement and found that only .the former are barred. *See id.*

In *Werner & Pfleiderer*, the district court, relying on *Unifoil*, dismissed a commercial party's claims for common law fraud and fraud under the Consumer Fraud Act. *See Werner & Pfleiderer,* 697 F.Supp. at 814–15. There, the buyer alleged that the seller sold a machine without disclosing that it did not meet the guaranteed production rates contained in the sales contract. *See id.* at 814. Because the dispute was "essentially contractual in nature" and the contract provided for a remedy if the machine were defective, the court found only contractual or UCC remedies to be appropriate *Id.* at 815.

■ However, subsequent New Jersey federal and state cases have permitted fraud claims to stand in breach of contract cases. *See Lo Bosco v. Kure Engineering Ltd.*, 891 F.Supp. 1020 (D.N.J.1995) (individual may sue alleged joint venture partner for fraud as well as breach of contract); *First Valley Leasing, Inc. v. Goushy*, 795 F.Supp. 693 (D.N.J.1992) (equipment purchaser may bring fraud and Consumer Fraud Act claims alongside breach of contract claim) *Coastal Group, Inc. v. Dryvit Systems, Inc.*, 274 N.J.Super. 171, 643 A.2d 649 (App.Div.1994) (commercial buyer seeking damages for economic losses resulting from defective product could also pursue common law fraud and consumer fraud claims), *D'Angelo v. Miller Yacht Sales*, 261 N.J.Super. 683, 619 A.2d 689 (App.Div.1993) (consumer buyer of defective .yacht may bring fraud and Consumer Fraud Act claims) *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226 N.J.Super. 200, 543 A.2d 1020 (App.Div.1988) (commercial buyer of a defective yacht may seek punitive damages for alleged fraud), *aff'd*, 118 N.J. 249, 571 A.2d 294 (1990).

Many of these courts have noted that the UCC expressly preserves a buyer's right to maintain a cause of action for fraud. *See* N.J.S.A. 12A:1–103 ("Unless displaced by particular provisions of this Act, the principles of law and equity, including ... the law relative to ... fraud [and] misrepresentation ... shall supplement [the UCC's] provisions."). This provision is inconsistent with the expansive interpretation of *Spring Motors* adopted in *Unifoil* and *Werner & Pfleiderer. See First Valley Leasing,* 795 F.Supp. at 700; *Coastal Group,* 274 N.J.Super. at 178, 643 A.2d 649. Confronted with the "morass" of case law in this area, the Third Circuit commented that "the continuing validity of fraud claims in cases involving frustrated economic expectations under New Jersey law is very complex and troublesome." *Vanguard Telecommunications, Inc. v. Southern New England Tel. Co.,* 900 F.2d 645, 653 (3d Cir.1990). The New Jersey Supreme Court, though, recently explicitly stated that commercial entities may resort to noncontractual remedies in UCC actions: "In addition to the right to recover under the U.C.C., victims of fraud or unconscionable conduct possess substantial rights to recover for common-law fraud or for violations of various state and federal statutes." *Alloway v. General Marine Indus.,* 149 N.J. 620, 639–40, 695 A.2d 264 (1997).

*Unifoil* and *Werner & Pfleiderer* are also readily distinguishable from the present case. Florian does not allege that Cardinal delivered defective goods. Rather it bases its breach of contract claim on the defendant's nonperformance after February 1, 1997. Also, this is not simply a "garden variety breach of contract case[.]" *First Valley Leasing,* 795 F.Supp. at 699. Plaintiff contends that, during negotiations, Cardinal misrepresented the extent to which its exclusive arrangement with Four Seasons would impede its ability to deliver the LoE²® glass. This more closely resembles a fraud in the inducement claim which even the *Unifoil* court acknowledged would be cognizable. *See Unifoil,* 622 F.Supp. at 271. The factual basis for the alleged fraud is extraneous to

the contract—it does not involve nonfulfillment of a warranty or guarantee contained within the contract itself. Nor does it arise from misrepresentation concerning the character of defective goods as was the case in both *Unifoil* and *Werner & Pfleiderer.* Instead, the fraud counts fall squarely within the claims preserved under UCC § 12A:1–103.

Furthermore, the parties did not limit, by specification, the remedies available upon breach as they did in *Werner & Pfleiderer.* To permit Florian to pursue tort remedies does not allow remedies beyond those embraced by the contract. Whether the parties articulated in the contract the available remedies for breach is a factor that courts have emphasized in distinguishing their cases from *Werner & Pfleiderer. See Lo Bosco,* 891 F.Supp. at 1033; *First Valley Leasing,* 795 F.Supp. at 700.

■ The fraud counts are neither superfluous nor counterproductive because if the defendant is successful with its defense that it had no contract with Florian as claimed in its answer, the plaintiff may still recover under the alternative theories of common law fraud or consumer fraud. In addition, different remedies are available for the fraud claims. Plaintiff seeks punitive damages for its common law fraud claim and treble damages under the Consumer Fraud Act. Such forms of relief are generally not available for breach of contract where compensatory damages are the norm. *See Ellmex Constr. Co. v. Republic Ins. Co.,* 202 N.J.Super. 195, 207, 494 A.2d 339 (App.Div.1985), *cert. denied,* 103 N.J. 453, 511 A.2d 639 (1986). Plaintiff is entitled to recover these damages if it successfully establishes the elements of these causes of action. The state legislature intended persons who committed fraudulent commercial practices in connection with the sale of merchandise to be liable for treble damages. To hold that this statutory claim is subsumed by plaintiff's breach of contract cause of action would be contrary to legislative intent and would preclude consumer fraud claims in far too many circumstances.[3]

---

**3.** Cardinal also argues that the tortious interference counts must likewise be dismissed because

only contractual remedies are appropriate. Defendant has cited no authority in support of this

## IV. *Whether Florian's Punitive Damages Claim Should Be Dismissed*

Defendant contends that Florian's claim for punitive damages must be dismissed on the ground that such a remedy is not appropriate for breach of a commercial contract. Because the Court holds that plaintiff's fraud claims are viable, the punitive damages claim must also remain. Plaintiff, of course, may only recover exemplary damages if it proves that defendant's conduct was sufficiently egregious to warrant such relief.

### Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss.

**SO ORDERED.**

### ORDER

This matter comes before the Court upon the motion of Defendant Cardinal IG Corp. to dismiss Counts Three, Four, Five, and Six of the First Amended Complaint of plaintiff Florian Greenhouse, Inc. pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b). Defendant also moves to dismiss plaintiff's claim for punitive damages. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion,

The Court **denies** defendant's motion.

**SO ORDERED.**

specious position. A tortious interference claim arises when the defendant has interfered with a contractual or prospective economic relationship between the plaintiff and a third party. *See Printing Mart–Morristown,* 116 N.J. at 752, 563 A.2d 31. A claim that the defendant has breached its contract with the plaintiff is separate and distinct from a claim that the defendant has intentionally interfered with Florian's relationship with existing or prospective customers. One does not bar the other.